UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14068-CR-CANNON/MAYNARD

FILED BY _____ D.C.

MAR 08 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

UNITED STATES OF AMERICA,

v.

CHRISTOPHER JON BAUER,

Defendant.
_____/

## FACTUAL PROFFER

COMES NOW, the United States of America, by and through its undersigned Assistant United States Attorney, and Christopher Jon BAUER, together with his counsel, admits if this case were to proceed to trial, the government would be able to prove the allegations contained within counts two and three of the Indictment, which charges the defendant with possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and Title 18, United States Code, Section 2; and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and Title 18, United States Code, Section 2. The defendant, together with his counsel, further admits that if this case were to proceed to trial, the government would be able to prove the following facts, among others, beyond a reasonable doubt. The defendant also stipulates that those allegations, elements of the crime, and the following recitation of the facts shall constitute the underlying factual basis for the entry of a plea of guilty in this case:

1. On July 18, 2022, the Sebastian Police department initiated an investigation into an anonymous tip that a Brevard County resident was importing and distributing fentanyl from his residence. Detective (Det.) Bryan Melius of the Sebastian Police Department conducted

preliminary surveillance.

2. On August 16, 2022, Special Agent (SA) David Catalano of the Department of Homeland Security, Homeland Security Investigations (HSI) obtained a "mail cover" for the target address, providing a historical database result of the packages sent to that address.

3. On August 31, 2022, the Postmaster for the Sebastian Post Office alerted SA Catalano that a package, addressed to co-defendant Durkin, arrived at the post office. Det. Melius and SA Catalano set up surveillance at the United States Post Office, located at 1290 Main Street, Sebastian, Florida. SA Catalano and Det. Melius witnessed a red Cadillac SUV, driven by the defendant with co-defendant Durkin in the passenger seat, arrive at the post office. Upon arrival, Durkin exited the Cadillac and walked into the Post Office, returning a short time later with a USPS Express package.

4. After Durkin re-entered the Cadillac, Det. Melius watched the Cadillac pull up to a GMC pickup truck that was also in the post office parking lot. Durkin again exited the Cadillac, conducted what Det. Melius recognized, based on his training and experience, what appeared to be a hand-to-hand drug transaction, and then re-entered the Cadillac. SA Catalano recorded this interaction on his cellular phone. As the defendant drove the Cadillac out of the parking lot, neither he nor Durkin was wearing their seatbelt.

5. K9 Officer Irwin and K9 Officer Revis located the Cadillac.[1] Officer Irwin also observed that neither occupant was wearing their seatbelt as they traveled east on Main Street. Officer Irwin activated his emergency lights to conduct a traffic stop, and the defendant turned on his right turn signal, turning right onto Cross Street.

6. Rather than stopping, the defendant accelerated, and then turned right on Palmetto

---

[1] Both Officers Irwin and Revis were driving marked police vehicles, equipped with a front push bar, lights, sirens, and "Sebastian Police" markings.

2

Avenue, failing to stop at the stop sign and stop bar, prior to making a righthand turn, in violation of Florida Statute 316.123(2)(a). Officer Irwin activated his sirens, in a further attempt to stop the defendant, but the defendant continued driving.

7. The defendant then activated his brakes, drawing Officer Irwin closer to his vehicle, and after releasing the brakes, he abruptly applied the brakes again, in an apparent attempt to stop the pursuit, by brake checking Officer Irwin. As a result, Officer Irwin collided with the back of the defendant's vehicle, thereafter, pushing it forward in an attempt to end the pursuit. Despite these efforts, the defendant continued his flight, making a left turn onto Main Street, which caused a black Dodge Journey to apply its brakes. The defendant accelerated to at least 70 mph, in a 30 mph zone, moving into the opposite lane of traffic to pass slower vehicles. At no point after the collision, did the defendant attempt to stop and remain at the scene of the crash.

8. Eventually, Officer Irwin caught up to the defendant and attempted a PIT[2] maneuver to stop the vehicle. That maneuver damaged the front left suspension of the defendant's vehicle, but he continued to flee. Officer Irwin attempted a second PIT maneuver, spinning the vehicle in the opposite direction, which allowed Officer Revis to pin the defendant's vehicle between his police vehicle and Officer Irwin's police vehicle. Even after this second PIT maneuver, the defendant continued his attempt to flee, accelerating forward to the point that the right rear wheel of his vehicle was spinning and generating smoke, as recorded by Officer Revis's in-car camera.

9. During the stop and ultimate arrest, officers located a black bag on the ground next to the driver's side of the vehicle. They collected the bag as evidence, and discovered that it contained approximately 57 grams of fentanyl.

---

[2] "PIT" maneuver stands for pursuit intervention technique.

3

10. Inside the Cadillac on the driver's side floorboard, law enforcement officers discovered a bag of suspected methamphetamine that later tested positive for methamphetamine, with a chemistry weight of 12.53 grams and 100% purity; and a bag of approximately 4.5 grams of fentanyl. They also found a small amount of cocaine in the defendant's front left pants pocket.

11. The total suspected fentanyl recovered from the Cadillac and its occupants later tested positive, with a chemistry weight of 65.1 grams.

12. Post-*Miranda*, Durkin admitted to picking up approximately ten packages at the Sebastian Post office and approximately six packages at the 317 Sea Grape Avenue address, all on behalf of the defendant.

13. Durkin also admitted that she believed the packages contained fentanyl, because she knew that the defendant would mix it with other unknown substances and sell the mixture. She explained that on August 29, 2022, she observed multiple clear baggies containing a white powdery substance, which she believed to be fentanyl, at the defendant's residence. She believed they were fentanyl because both she and the defendant used the narcotics. Durkin stated she witnessed the defendant purchase suspected fentanyl from the "Dark Web" using his laptop computer, and that the defendant "cuts" the fentanyl with other unknown substances and sells the mixture.

14. During a search of the defendant's residence, agents located several items that corroborated Durkin's admissions, including a multi-colored rubber box containing a white powdery substance, which later field tested positive for fentanyl; a silver bowl containing a white powdery substance, which later field tested positive for fentanyl; several empty pill capsules, and multiple empty sandwich baggies, which were the same size and design as those located on the defendant's person and inside his vehicle on August 31, 2022; a digital scale; multiple pieces of

drug paraphernalia consistent with tools needed to "cut" and manufacture powdered narcotics, with the intention of mixing and packaging them for individual sale; and six empty and opened black vacuum sealed bags, which were the same size and design as those located in the defendant's vehicle on August 31, 2022.

15. The parties agree that total weight of the fentanyl attributable to the defendant is at least 280g but less than 400g.

16. The parties agree that these facts, which do not include all the facts known to the government and the defendant, are sufficient to prove the elements of the following offenses beyond a reasonable doubt:

Count 2: Possession with Intent to Distribute a Controlled Substance

**First:**   The Defendant knowingly possessed fentanyl;

**Second:**   the Defendant intended to distribute the fentanyl; and

**Third:**   the Defendant possessed 40 grams or more of mixture or substance containing fentanyl.

Count 3: Possession with Intent to Distribute a Controlled Substance

**First:**   The Defendant knowingly possessed methamphetamine;

**Second:**   the Defendant intended to distribute the methamphetamine; and

**Third:**   the Defendant possessed 5 grams or more of methamphetamine.

A defendant "aids and abets" a person if the defendant intentionally joins with the person to commit a crime.

A defendant is criminally responsible for the acts of another person if the defendant aids and abets the other person. A defendant is also responsible if the defendant willfully directs or authorizes the acts of an agent, employee, or other associate.

|  |  |
|---|---|
| | MARKENZY LAPOINTE<br>UNITED STATES ATTORNEY |
| Date: 2/24/23 | By: _____<br>CHRISTOPHER H. HUDOCK<br>ASSISTANT UNITED STATES ATTORNEY |
| Date: 3/8/23 | By: _____<br>CHARLES G. WHITE<br>ATTORNEY FOR DEFENDANT |
| Date: 3/8/23 | By: _____<br>CHRISTOPHER JON BAUER<br>DEFENDANT |